UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSHUA WELCOME,

      Plaintiff,

    v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

NO.  2:13-CV-3041-JLQ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

     Plaintiff appeals from the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Supplemental Security Income ("SSI") after a hearing before an Administrative Law Judge ("ALJ").  This case, filed on April 22, 2013, was reassigned to the undersigned on February 6, 2014.  (ECF No. 20).

     Before the court are Cross-Motions for Summary Judgment and Plaintiff's Reply.  (ECF Nos. 15, 17, 18).  Plaintiff is represented by attorney James Tree. Defendant is represented by Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney Jeffrey McClain.  Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**I.  PROCEDURAL HISTORY**

     On November 15, 2009 Plaintiff filed his current application for SSI benefits alleging disability beginning September 18, 2009. (Tr. 32). Plaintiff's application was

denied initially and on reconsideration. He requested a hearing before an ALJ. On October 25, 2011 an administrative hearing was held before ALJ James W. Sherry. Testifying at the hearing were the Plaintiff; Debra LaPoint, a vocational expert; and Mariam Welcome, Plaintiff's mother. On November 16, 2011 the ALJ issued an order finding Plaintiff not disabled since November 15, 2009, the date of his current application. (Tr. 32-49). The ALJ refused to reopen Plaintiff's prior unfavorable determinations of his applications for disability benefits filed in 2007 and 2008, however he stated that he considered "the complete medical history." (Tr. 32).

Plaintiff requested review of the ALJ's decision. The Appeals Council denied his request for review on February 22, 2013 (Tr. 1-6), making the ALJ's ruling the "final decision" of the Commissioner as the term is defined by 42 U.S.C. § 405(g). Plaintiff filed this action on April 22, 2013 seeking judicial review of the Commissioner's final decision.

## II. FACTUAL BACKGROUND

The facts are contained in the medical records, administrative transcript (ECF No. 12)("Tr."), and the ALJ's decision, and are only briefly summarized here.

### A. Plaintiff's History

Plaintiff was born in 1989 and was 22 years old at the time of the ALJ's hearing. He is approximately 5'8" tall and weighs 220 pounds. (Tr. 63). As a high school sophomore, Plaintiff was diagnosed by neurologist John R. Huddlestone, M.D., with multiple sclerosis ("MS") after experiencing two weeks of pain in his right eye followed by vision loss (acuity 20/600). (Tr. 385). Plaintiff has a limited work history with jobs which were part time and of short duration including a concession stand worker at a movie theater (2007), stocking shelves at Foot Locker (2008), and a fast food employee at Sonic (2008-2009) where he was hired and fired several times. Plaintiff testified he was "pretty much fired" from his job at the theater after the general manager told him he believed he was using his disease as an excuse after he asked to go home due to numbness in his left arm. (Tr. 75). Plaintiff testified that at

Sonic the most he would work would be about six hours a day and as soon as he was home from work he would go to sleep. (Tr. 80). He testified he was fired from Sonic due to an MS flare up. (Tr. 80). Plaintiff lives with his mother and does not know his father. He completed the tenth grade, but failed to complete the 11th grade because of absence from school due to his psychiatric hospitalizations. He completed his GED in 2008.

**B. Medical Evidence**

Plaintiff suffers from the most common type of multiple sclerosis, relapsing-remitting. MS is a disease affecting the central nervous system. The disease's aggravated state, known as a "flare-up" or "exacerbation," can last for days or months. (Tr. 281). These episodes are followed by partial or complete recovery periods (remissions). Plaintiff's physical symptoms of the disease primarily include chronic fatigue, optic neuritis, and decreased sensation in his limbs.

Plaintiff has had adverse reactions to Copaxone therapy, as well as to steroids (prednisone) which precipitated a period of severe psychosis in 2007. During that time Plaintiff was suicidal and violent (beating up his mother)(Tr. 565), and was hospitalized at two psychiatric hospitals in Tulsa, Oklahoma. (Tr. 380). On April 19, 2007, he was admitted to the acute adolescent unit at the Parkside Psychiatric Hospital where he remained until May 15, 2007. (Tr. 73). He was discharged with mental health diagnoses of schizoaffective disorder, bipolar type and early onset chronic dysthymia and prescribed Risperdal, Propranolol, Tegretol, Clonidine, and Trazadone. He also started Betaseron injections to treat his MS.

More recently, on August 13, 2011, Plaintiff was involuntarily committed to the mental health ward of the Yakima Valley Memorial Hospital for a manic episode associated with his bipolar illness, sleep disturbance, delusions, grandiosity, auditory hallucinations and fear he would hurt his mother. (Tr. 722). Plaintiff's mania "settled down" after four days of reinstituting his mental health prescriptions of Risperidone and Depakote. He was discharged to his home on a 90-day "least restrictive

alternative." (Tr. 722)

The medical record includes clinical treatment notes from numerous providers including those treating him during his hospitalizations, his treating neurologist, Dr. Huddlestone, treating family physicians Peter Harveson, M.D., Theodore Prier, M.D., Fady F. Sabry, M.D., and Allen Chen, M.D. of Figgs Eye Clinic. Consultative psychological evaluations were conducted on April 14, 2010 by Jay M. Toews, Ed.D. (Tr. 504-511); on November 29, 2010 by social worker, M. Gabriela Mondragon, MSW (Tr. 638-643); and on June 1, 2011 by social worker Russell Anderson, LICSW (Tr. 648-649). The record also contains the reviews of non-examining agency medical professionals, Sharon Underwood, Ph.D. (Tr. 512-528); Norman Staley, M.D. (Tr. 530-538); and James Bailey, Ph.D. (Tr. 539).

## C.    Commissioner's Findings

The ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful activity since November 15, 2009, the date of Plaintiff's most recent SSI application. (Tr. 34).

At Step 2, the ALJ determined that Plaintiff had the following severe impairments: multiple sclerosis, relapsing, remitting type; optic neuritis; obesity; hypertension; adjustment disorder; dysthymic disorder; Bipolar disorder with mania and psychosis; and anxiety. (Tr. 34).

At Step 3, considering the effects of obesity, the ALJ determined that the Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Pt. 404 Subpt. P App 1 (Listings).

At Step 4, the ALJ determined the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) with certain exertional and non-exertional limitations.

> The claimant [can] lift[] and carry[] no more than 20 pounds occasionally, and 10 pounds frequently. The claimant can stand and/or walk for about 5 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. The claimant has an unlimited ability to push and pull within the lifting restrictions specified above. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant cannot climb ladders, ropes,

or scaffolds. The claimant should avoid concentrated exposure to extreme heat, wetness humidity, poorly ventilated areas, fumes, odors, dust, chemicals, gases, and hazards, such [as] unprotected heights, and moving machinery. The claimant is capable of understanding and performing simple, routine, and repetitive tasks, and some well learned detailed tasks. The claimant can perform occasional decision-making in a low-stress job, and adapt to occasional changes in the work setting. The claimant can have superficial contact with the general public, co-workers, and supervisors. The claimant cannot work in an environment with fast-paced production requirements.

(Tr. 37). In the Step 4 findings, the ALJ discussed the medical evidence and Plaintiff's testimony, but did "not find all of the claimant's symptom allegations to be credible." (Tr. 37). The ALJ determined Plaintiff had no past relevant work. (Tr. 42).

At Step 5, the ALJ found transferability of job skills not an issue because Plaintiff had no past relevant work. (Tr. 43). The ALJ also considered that Plaintiff is a "younger individual" as defined by 20 C.F.R. 416.963 and has a limited education. (Tr. 42-43). Relying upon the testimony of vocational expert, Deborah LaPointe, the ALJ concluded that there are unskilled jobs that exist in significant numbers in the national economy that the claimant can perform, including housekeeping/cleaner (DOT 323.687-104, SVP 2, light) and cannery worker (DOT 529-686-014, SVP 2, light). (Tr. 43). Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, from November 15, 2009 to November 16, 2011.

## III. LEGAL STANDARDS

### A.    Sequential Evaluation

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if the impairments are of such severity that the claimant is not only unable to do his previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987):

Step 1: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is, benefits are denied. If he is not, the decision maker proceeds to Step 2.

Step 2: Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step 3: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to Step 4.

Step 4: Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the inquiry proceeds to the Fifth and final Step.

Step 5: Is the claimant able to perform other work in the national economy in view of his age, education and work experience? 20 C.F.R. §§ 404.1520(f), 416.920(f).

The initial burden of proof rests upon the Plaintiff to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The

burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

This court's role on review of the decision of the ALJ is limited. The court reviews that decision to determine if it was supported by substantial evidence and contains a correct application of the law. *Valentine v. Comm'r. Soc. Sec. Admin,* 574 F. 3d 685,690 (9th Cir. 2009). This court is obligated to affirm the ALJ's findings if they are supported by substantial evidence and the reasonable inferences to be drawn therefrom. *Molina v. Astrue*, 674 F. 3d 1104, 1110-11 (9th Cir. 2012)**.** Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion.

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the [Commissioner] applied the proper legal standards." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). This court may set aside a denial of benefits only if the basis for denial is not supported by substantial evidence or if it is based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is the

role of the trier of fact, the ALJ, not this court, to resolve conflicts in the evidence. *Richardson*, 402 U.S. at 400.  If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Thomas*, 278 F.3d at 954 (9th Cir. 2002).

**IV. ISSUES**

Plaintiff contends the ALJ's decision was not supported by substantial evidence and identifies four issues for review:

1. Whether the ALJ improperly rejected the opinions of Plaintiff's treating and examining medical providers;

2. Whether the ALJ erred in assessing Plaintiff's credibility and "rejecting the claimant's subjective complaints";

3. Whether the ALJ erred at Step 3 in determining Plaintiff's condition did not meet or equal a listing; and

4. Whether the ALJ erred at Step 5 (due to the errors in the credibility determination and analysis of the medical evidence affecting the limitations in the RFC).

(ECF No. 15).

Plaintiff asks the court to reverse the ALJ and remand for the award of benefits, or alternatively to remand for "an adequate step five analysis."  The Commissioner contends the ALJ's decision is supported by substantial evidence and free of legal error.

**V.    DISCUSSION**

**A.    Medical Source Evidence**

**1.    Legal Standard**s

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the

claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id*. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Multiple sclerosis is a progressively disabling condition characterized by periods of remission and exacerbation. *Estes v. R.R. Ret. Bd.*, 776 F.2d 1436, 1437 (9th Cir. 1985). The Ninth Circuit has recognized that "multiple sclerosis can be disabling notwithstanding normal activity in periods of remission." *Id*. at 1438. As the Ninth Circuit observed:

> [m]ultiple sclerosis is an incurable progressive disease subject to such periods of remission and exacerbation.... Because [the period when petitioner worked and attended school] was unquestionably a period of remission, we believe the ALJ erred in placing undue reliance on this brief and temporary interruption of plaintiff's progressively disabling condition. Rather, he should have considered that time-span as merely a period of remission in a continuing disability...

*Id.* (*quoting Parish v. Califano*, 642 F.2d 188, 193 (6th Cir.1981).

The ALJ in evaluating a claimant with MS must consider "the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). The Social Security regulations likewise recognize that "[i]n conditions which are episodic in character, such as multiple sclerosis ... consideration should be given to frequency and duration of exacerbations, length of remissions, and permanent residuals." 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 11.00(D) (emphasis added).

### 1. Theodore Prier, M.D. (Treating Physician)

The ALJ's decision reflects a failure of consideration of the episodic nature of

Plaintiff's MS as mandated by Ninth Circuit precedent. Plaintiff's entire medical record consistently reflects that he has experienced exacerbated symptoms – some lasting for days, others for months -- consistent with the nature of MS. (Tr. 609 (3/6/2009, eye pain for two weeks); Tr. 475 (5/22/2009, flare up with blurred vision on and off for 3 months); Tr. 480 (1/11/2010, 3 weeks of significant fatigue "suggesting a minor relapse"); Tr. 635 (3/10/2010, blurred vision for six weeks); Tr. 673 (8/30/2010, concern re: increased need for sleep and a "few days" with tremor and slurring of speech); Tr. 670 (12/8/2010, blurred vision); Tr. 664 (3/9/2011, eye pain followed by double vision, headaches); Tr. 706 (3/16/2011, reporting 3-week "minor relapse" with fatigue, "horizontal diplopia" and "monocular blurred vision")). The ALJ's chronological statement of the record fails to demonstrate the specific evaluation of the frequency, intensity, and duration of Plaintiff's flare ups and periods of remission. For this reason, the ALJ's ground for rejecting Plaintiff's treating physician's most recent opinion is not convincing.

Dr. Prier opined on July 22, 2011 that Plaintiff would be unable to work 40 hours per week due to fatigue and acute MS flares and would miss _on average_ 3 days of work per month. The ALJ's sole reason for rejecting Dr. Prier's entire opinion was that it "is only partially consistent with _his_ progress notes and medical report, in which the claimant is often asymptomatic." (Tr. 41). The existence of asymptomatic periods is characteristic of the Plaintiff's multiple sclerosis disease and not a legitimate reason to reject this treating physician's opinion. The ALJ's failure to consider this treating physicians's opinion's consistency with the entire record of acute exacerbations of MS symptoms was error. As noted by Plaintiff, Dr. Prier's assessment of the impact of Plaintiff's flare ups is consistent with the earlier assessment made by Plaintiff's other treating physician Peter Harveson, M.D. In May 2010, Dr. Harveson opined that:

> When his MS flares, he usually has an increased need for sleep, sleeping maybe 13-14 hours a day, and he may have that once or twice a week....His next most common symptom is that he will lose sensation in his extremities, either his hands or feet, and it lasts for 2-3 weeks, and this only happens maybe once or twice a year. The next most common one is vision abnormalities and this may happen every 4 months or so, but his vision gets kind of blurry, or more

specifically, he notices that parts of his vision will be real dim in kind of a blotchy pattern.

(Tr. 618). Dr. Harveson opined that Plaintiff "could do a job where he can work when he is well, and not when he is ill." (Tr. 617).  While stating "significant weight" was given to the opinion of Dr. Harveson, the ALJ's decision failed to even acknowledge Dr. Harveson's report on the nature of Plaintiff's MS flares. (Tr. 40).

The ALJ's selective discussion of this critical evidence supports the court's conclusion that the ALJ failed to properly consider and analyze the frequency, intensity, and duration of Plaintiff's MS relapses.  It is error for the ALJ to ignore a treating or examining physician's opinion. *See e.g., Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988) ("ALJ may not ignore the evidence"); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability").  Furthermore, when the record contains vocational expert testimony that ignored treating physician opinions would prohibit competitive employment,  as set forth below, the claimant establishes prejudicial error.

## 2.  Mental Health Evaluations

### a. Jay M. Toews, Ed.D

Plaintiff also contends the ALJ improperly rejected the psychological opinion evidence of examining psychologist Dr. Toews, Ed.D.  In his May 2010 report, Dr. Toews noted that the Plaintiff "complains of a good deal of fatigue" (Tr. 507) and:

> has no friends, generally avoids interactions with neighbors, and is reclusive. He endorses a narrow range of leisure and recreational activities, consisting of videogames, computer and Internet, and TV...He spends most of the day smoking and sleeping.  He has no regular sleep/wake cycle. He does not eat regularly.

(Tr. 505).  The examining psychologist made a provisional diagnosis of adjustment disorder with anxiety and depression.  Plaintiff's WMS-III, Primary Index Scores ranged from "extremely low to average" and Dr. Toews assessed a GAF score of 48-55, suggesting serious to moderate symptoms or serious to moderate impairments in social, occupation, or school functioning.  Dr. Toews ultimately opined that Plaintiff's

"[p]rimary problem would be fatigue and ability to persist." (Tr. 507).  He did not specifically opine whether fatigue might also be a symptom of his psychological impairments.  The evaluation also stated: "*During periods of relapse*, he would have severe sensory and physical problems that would prevent him from sustaining employment.  In all probability, this young man would not be able to sustain regular employment due to symptoms of multiple sclerosis." (Tr. 507).

The ALJ accorded "only little weight" to Dr. Toews' opinion, first reasoning that his "opinion and lower GAF score are inconsistent...with the objective findings and observations from the claimant's psychological evaluation, and with the claimant's report of activities of daily living." Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient and the score only represents a snapshot of an individual's level of functioning at a particular time. However, the scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin*., 169 F.3d 595, 598 (9th Cir.1999).  The Commissioner has explicitly disavowed use of GAF scores as indicators of disability.  "The GAF scale ... does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed.Reg. 50746–01, 50765 (August 21, 2000). Moreover, beginning in 2013, the GAF scale was discontinued from the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association, 5th ed. 2013) (DSM–V). As a result, the GAF score is not particularly relevant to the disability determination, and here, it is not so inconsistent with the remainder of the record as to provide the ALJ a legitimate basis to reject Dr. Toews opinion in its entirety.

Second, the ALJ rejected Dr. Toews' opinion because he is not a medical doctor and is therefore not qualified to render an opinion on "the disabling effects of the claimant's medical condition." (Tr. 39). While this possibly provides a basis to reject Dr. Toews opinion *in part*, Dr. Toews is qualified to opine that one of the Plaintiff's "primary problem[s]" would be the ability to persist during periods of relapse.  Even

the state agency reviewing psychologist, Sharon Underwood, whose opinion the ALJ also accorded "great weight," assessed that Plaintiff would have moderate limitations in his ability to maintain concentration, persistence or pace; to maintain attention and concentration for extended periods; and to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances. Overall, she concluded the record supported that Plaintiff "would have occasional difficulty with sustained cpp [concentration, persistence and pace] during his MS relapses, but otherwise would do fine." (Tr. 528).

The court concludes the ALJ improperly discounted Dr. Toews' opinions.

### 3.    Russell Anderson, LICSW

Once in 2010 and once in 2011, the Plaintiff met with social workers for a psychological evaluation. Unlike physicians and psychologists, social workers are not "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), (d), 416.913(a)(d). As a result, an ALJ may disregard a social worker's opinion for reasons that are germane to the witness. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001). Here, the ALJ accorded "great weight" to the opinion of social worker M. Gabriela Mondragon, MSW, who assessed Plaintiff in 2010 with a current GAF score of 58. (Tr. 639). Yet, the ALJ accorded "only little weight" to the opinion of social worker Russell Anderson who assessed Plaintiff in 2011 with a GAF score of 42, stating that his GAF score "is not consistent with the claimant's overall record." As explained above, GAF scores only represent a snapshot opinion about the level of functioning *on the day of the examination*. Therefore differences amongst the varying GAF scores in the record do not undermine the usefulness of one of the few psychological evaluations in the record. An ALJ may not impermissibly pick and choose portions of the medical record favorable to his interpretation, while ignoring less favorable evidence. The ALJ's decision ignores the much more relevant consistencies in Ms. Mondragon and Mr. Anderson's evaluations. Ms. Mondragon opined Plaintiff has "moderate difficulty with social interaction and occupational functioning". Anderson opined Plaintiff

ORDER - 13

"tends to be isolative, poor interpersonal communication skills" and has a "moderate to marked impairment in social and occupational functioning." (Tr. 647). Both social workers noted Plaintiff's fatigue and poor sleep habits, lack of friends, and assessed that he would be moderately impaired in his ability to persist in tasks with complex instructions.

By selectively citing to the record and placing undue emphasis on the assessed GAF score, the ALJ erred by rejecting the most relevant aspects of the reports of these social workers.

### B.    Credibility

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner, not this court. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "secondguess" it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006)(citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. *Id*. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected

the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The court concludes that the ALJ's adverse credibility findings herein were not based upon clear and convincing reasons, given the nature of the Plaintiff's symptoms. First, the ALJ discounted Plaintiff's alleged "disabling impairments that prevent all work activity" (Tr. 38) based upon Plaintiff's 2009 ER visit for tailbone pain which started after wrestling the day before. This single incident is not at all "inconsistent" with Plaintiff's position which is in fact that he is unable *to sustain* full time employment due to his particular symptoms primarily associated with flare-ups from MS. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)(disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations).

Second, even if Plaintiff happened to be "pleasant and cooperative" with a "cocky and self-assured mood" during his examination with Dr. Toews, this does not reflect on the Plaintiff's ability to maintain social functioning on a sustained basis, as opposed to during singular examinations with medical professionals. The record consistently reflects that the Plaintiff lives a reclusive isolated life and does not have many friends.

Third, while it is true the Plaintiff's regimen of medical care evidences periods of neglect (in part due to his turning 18), the fact that Plaintiff followed up with a neurologist within *11* days (3/6/2009 - 3/17/2009) instead of within the *3 to 5* day period recommended by the emergency room physician can hardly be considered convincing evidence of a lack of follow-through.

Finally, Plaintiff testified that he cannot sustain work in part because he is "tired all the time" and often will sleep 13 to 14 hours or more during flare-ups. The ALJ notes that during his July 2010 examination with Dr. Huddlestone, Plaintiff complained both of excessive fatigue associated with MS and excessive anxiety and difficulty sleeping. These complaints relating to the impact of separate conditions on Plaintiff's sleep are not inconsistent and therefore do not undermine the Plaintiff's

credibility.

**C. Step 3**

At Step 3, the ALJ must determine whether the claimant's impairment is equivalent to one of a number of listed impairments the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Plaintiff contends the record establishes that he satisfies the multiple sclerosis listing, see 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.09. Although this listing provides three different means by which a claimant can establish that he is disabled, Plaintiff invokes only two of these sections, 11.09(A) and (B).

Section 11.09(A) provides criteria for evaluating disorganization of motor function when an individual is at rest. Specifically, the criteria under § 11.09(A) is cross-referenced with § 11.04(B), which requires that an individual show that he exhibits "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.09(A), § 11.04(B). Furthermore, § 11.04(B) also references § 11.00(C) which identifies that:

> [p]ersistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral cerbellar [sic], brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00(C). Substantial evidence supported the ALJ's decision that Plaintiff did not meet Listing 11.09(A).

Section 11.09(B) provides references to listings 2.02, 2.03, 2.04, and 12.02 for evaluating visual or mental impairments *caused by MS.* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.00(E).

> 2.02 Loss of central visual acuity. Remaining vision in the better eye after best correction is 20/200 or less.
> 2.03 Contraction of the visual field in the better eye, with:
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees.

OR
B. An MD of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d).
OR

C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).
2.04 Loss of visual efficiency, or visual impairment, in the better eye:
A. A visual efficiency percentage of 20 or less after best correction (see 2.00A7d).
OR
B. A visual impairment value of 1.00 or greater after best correction (see 2.00A8d).

... 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.

20 C.F.R. PART 404 APPENDIX 1, § 2.02–2.04, 12.02 (in part).

Plaintiff has not demonstrated how the medical record meets these criteria. Although acute visual impairment and episodes of double vision have occurred on several occasions during Plaintiff's MS flares, he does not have active visual limitations meeting the Listing criteria. Furthermore, although Plaintiff experiences anxiety and depression, he has not provided any medical evidence to support a finding that his anxiety or depression are *caused by* his Multiple Sclerosis as Paragraph B of Listing 11.09 requires. The ALJ's finding that Plaintiff did not satisfy the requirements of Listing 11.09 was not erroneous.,

**D.    Step 5**

Lastly, Plaintiff argues that the ALJ's Step 5 finding was erroneous, based upon the ALJ's errors in the earlier steps of the evaluation process resulting in a deficient Residual Functional Capacity finding. The ALJ's deficient RFC finding resulted from the failure to account for all of Plaintiff's relevant limitations such as the severity of the Plaintiff's fatigue and the need for Plaintiff to miss, on average, three days of work each month due to MS flare ups. The ALJ's line of questioning of the vocational experts at the administrative hearing (including just *two* questions regarding the frequency of flare ups) reflects a failure to inquire into the relevant aspects of the

Plaintiff's symptoms and the remitting/relapsing nature of the Plaintiff's disease.

## VI. CONCLUSION

Here, it is clear from the record the ALJ should have awarded benefits if the opinions of Dr. Prier, Dr. Harveson, and the Plaintiff's testimony were properly credited. The Vocational Expert (VE) testified at the hearing that a person with the RFC determined by the ALJ, with the additional need to sleep during the day, especially during flare ups, would not be able to perform competitive employment. (Tr. 90)( "No..It sounds like someone with his situation may be able to obtain work, like you said in the past but would not be able to maintain or sustain it because of those issues."). The VE also testified that an unskilled employee who needed to miss three or more days of work a month would be replaced by an employer. (Tr. 90). Finally, the VE testified that a person significantly limited in their ability to maintain regular attendance, be punctual, or with the need to lay down during the day, would not be able to sustain work on a full time basis.

Under the Ninth Circuit's "credit-as-true" doctrine, a court should remand for calculation and award of benefits when (1) the ALJ failed to provide legally sufficient reasons for discounting the testimony of a claimant and/or treating physician; (2) "there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such [testimony] credited."

The court concludes that under this doctrine this matter should be remanded to the Commissioner for the award of benefits.

For the reasons discussed above, it is hereby **ORDERED** that:

1. This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security for the calculation and award of benefits; and

2. Plaintiff's Motion For Summary Judgment (**ECF No. 15**) is **GRANTED;**

3. Defendant's Motion For Summary Judgment (**ECF No. 17**) is **DENIED.**

The Clerk of Court is directed to file this Order, enter judgment in favor of the

1    Plaintiff and against Defendant Carolyn Colvin as ordered above for the calculation

2    and award of benefits,  provide copies to counsel, and **CLOSE THE FILE**.

3            DATED this 9th day of May, 2014.

4                                    s/ Justin L. Quackenbush
                                JUSTIN L. QUACKENBUSH
5                        SENIOR UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER – 19